UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-24382-CIV-BLOOM/OTAZO-REYES

BAYRON RODRIGUEZ,

      Petitioner,

v.

MICHAEL W. MEADE,
Miami Field Office Director,
Enforcement and Removal Operations,
Immigration and Customs Enforcement,
Department of Homeland Security,
in his official capacity,

      Respondent.

_____ /

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Bayron Rodriguez's ("Rodriguez" or "Petitioner") Expedited Motion for Temporary Restraining Order (hereafter, "TRO Motion") [D.E. 8]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 7]. Respondent Michael W. Meade ("Respondent") filed a Response in Opposition to the TRO Motion (hereafter, "Response") [D.E. 15]. The undersigned held a Zoom evidentiary hearing on this matter on December 15, 2020 (hereafter, "Evidentiary Hearing") [D.E. 18]. Thereafter, pursuant to the undersigned's directive, the parties supplemented the record [D.E. 19-21]. After full consideration of these materials, the undersigned respectfully recommends that Rodriguez's TRO Motion be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

On October 26, 2020, Rodriguez filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (hereafter, "Petition") [D.E. 1]. Therein, Petitioner alleges

that he is a Guatemalan national being held in immigration detention at Krome Detention Center ("Krome") in South Florida.[1]  Petitioner claims that his health and safety at Krome are jeopardized by the COVID-19 Pandemic and seeks release from detention, asserting three causes of action:

> Count One -   *Accardi* Doctrine, Fifth Amendment/APA Violation of Detention Standards
>
> Count Two -   Fifth and Eighth Amendments - Violation of Right to Reasonable Safety
>
> Count Three - Fifth Amendment - State-Created Danger

<u>See</u> Petition [D.E. 1 at 20-25].

In support of his TRO Motion, Petitioner argues that he is likely to succeed on his due process claims because he has been wrongly denied a bond hearing and is wrongly imprisoned. <u>See</u> Memorandum of Law in Support of TRO Motion [D.E. 8-1 at 9].  At the Evidentiary Hearing, Petitioner argued that he should be immediately released, pursuant to the Court's habeas corpus jurisdiction or, in the alternative, granted a bond hearing before an Immigration Law Judge ("ILJ").

## <u>APPLICABLE LAW</u>

### *1. Injunctive relief*

 A party seeking injunctive relief must show that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." <u>Wreal v. Amazon.com, Inc.</u>, 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)).  In the Eleventh Circuit, "a preliminary injunction is an extraordinary and drastic remedy" not to be granted unless the movant clearly establishes the

---

[1]  Respondent contends that Liana Castano, as Officer in Charge at Krome, is the proper Respondent in her official capacity; and that Michael W. Meade should be dismissed.  <u>See</u> Response [D.E. 15 at 9 n.3].  For purposes of the TRO Motion, the undersigned deems the Petition applicable to the proper Respondent.

burden of persuasion as to each of the four prerequisites.  Siegel, 234 F.3d at 1176 (citation omitted).  The same standard applies to both preliminary injunctions and temporary restraining orders.  Windsor v. United States, 379 F. App'x 912, 916-17 (11th Cir. 2010).

In cases where a party seeks injunctive relief that would force the opposing party to act, the relief sought is in the nature of a "mandatory or affirmative injunction and the burden on the moving party increases."  Haddad v. Arnold, 784 F. Supp. 2d 1284, 1295-96 (M.D. Fla. 2010) (internal quotation marks omitted) (citing Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp., 441 F.2d 560, 561 (5th Cir. 1971)).  "A mandatory injunction of this nature, especially at the preliminary stage of proceedings, should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party."  Miami Beach Fed. Savs. & Loan Assn v. Callander, 256 F.2d 410, 415 (5th Cir. 1958) (citing Am. Lead Pencil Co. v. Schneegass, 178 F. 735, 738 (C.C.N.D. Ga. 1910)).

### 2.  *Relevant immigration statutes*

Title 8, United States Code, Section 1226 provides, in pertinent part:

(a)  Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1)  may continue to detain the arrested alien; and

(2)  may release the alien on—

(A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B)  conditional parole

8 U.S.C. § 1226(a) (hereafter, "Section 1226(a)").

Title 8, United States Code, Section 1231 provides, in pertinent part:

(a)  Detention, release, and removal of aliens ordered removed

(1)  Removal period

(A) In general

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

(B) Beginning of period

The removal period begins on the latest of the following:

(i)        The date the order of removal becomes administratively final.

(ii)       If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)      If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a) (hereafter, "Section 1231(a)").

## FACTUAL FINDINGS

Petitioner testified at the Evidentiary Hearing.  See Exhibit & Witness List [D.E. 22].  The undersigned admitted the following exhibits at the Evidentiary Hearing: Petitioner's Exhibits 1-3 [D.E. 17-1 through 17-3]; Petitioner's Affidavit [D.E. 1-2]; and Respondent's Exhibits 1-12 [D.E. 15-1 through 15-12].  Id.[2]  Petitioner's Conviction Record, submitted pursuant to the undersigned's post-hearing instructions, is also admitted [D.E. 19-1].

### A.    *Petitioner's testimony*

1.       Petitioner claimed Guatemalan citizenship, and no other citizenship.

2.       Petitioner testified that he last entered the United States in September 2013.  Since

---

[2]  Petitioner's Affidavit and Respondent's Exhibit 12 relate to Petitioner's COVID-19 claims, which do not provide a basis for the TRO Motion.  See Affidavit [D.E. 1-2]; Respondent's Ex. 12 [D.E. 15-12].

that time, he became employed at a restaurant, learned English, obtained a GED, and took a course in air conditioning technology.  See Petitioner's Ex. 1 (August 18, 2020 Letter from La Granja Restaurants); Petitioner's Ex. 3 (February 28, 2019 GED certificate & June 11, 2020 technical school certificate).

3.       Petitioner claimed to have a place to stay if released on bond and that a U.S. citizen was willing to sponsor him.  See Petitioner's Ex. 2.

4.       On cross-examination, Petitioner acknowledged that he had entered the United States illegally four times in 2013, with the last entry occurring in September 2013.

5.       After his first illegal entry, he claimed to be a Mexican citizen and gave an alias to U.S. immigration authorities when he was removed to that country.

6.       After another illegal entry through Arizona, Petitioner was arrested, served 64 days in jail, and was removed to Mexico again.

7.       After another illegal entry through Texas, Petitioner was arrested, served 60 days in jail, and was removed to Mexico again.

8.       After entering the United States for a fourth time in September 2013, Petitioner has remained in the United States.  He was arrested in Florida in 2020 for driving without a license. He was also charged in federal court with illegal reentry and pled guilty.

9.       On re-direct examination, Petitioner testified that his life had been threatened in Guatemala by a group of criminals who had tried to kill him in 2012 and that he had asked to be removed to Mexico to save his life.

10.      Although he admitted giving an alias to immigration authorities, Petitioner claimed that he had used his real name while in the United States.

11.      On re-cross examination, Petitioner acknowledged that, on his first entry into the

United States, he did not seek asylum.

### B. *Petitioner's immigration and criminal records*

12.     On March 25, 2013, Border Patrol Agent Miguel Soto completed Form I-213, Record of Deportable/Inadmissible Alien, for an individual named Abimael Lopez-Ruiz, who claimed Mexican citizenship.  See Respondent's Ex. 1.  As noted above, Petitioner has acknowledged giving an alias to U.S. immigration authorities at that time.

13.     As documented in this Form I-213, a Border Patrol Agent had encountered Petitioner in the District of Arizona on March 13, 2013, determined that Petitioner had illegally entered the United States, and arrested him.  Id.  Petitioner was then transported to the Tucson Coordination Center for processing, where he admitted having illegally crossed the international border without undergoing inspection at a designated Port of Entry.  Id.  Petitioner had claimed to be a resident of Tila, Chiapas, Mexico.  Id.  Petitioner was subject to expedited removal proceedings pursuant to Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act ("INA"). Id.

14.     On June 23, 2013, Immigration Enforcement Agent Thornbloom completed another Form I-213, Record of Deportable/Inadmissible Alien, for Petitioner alias Abimael Lopez-Ruiz.  See Respondent's Ex. 3.  This Form I-213 documented Petitioner's March 2013 illegal entry and reinstated the prior Deportation Order, Form I-871.  Id.

15.     Although this Form I-213 indicated that Petitioner had been charged with "Conspiracy to Commit Smuggling Humans, a class 4 felony," id., court records discussed below show that he was actually prosecuted for a different crime.

16.     On June 21, 2013, pursuant to a plea agreement, Petitioner was convicted of having engaged in solicitation to commit smuggling, a class 6 felony, on April 17, 2013, in violation of

Arizona Revised Statutes §§ 13-2319, 13-1002, 13-701, 13-702, 13-801.  See Petitioner's Conviction Record [D.E. 19-1].  Petitioner was sentenced to a term of 64 days in the county jail, commencing June 21, 2013, with credit for 64 days served.  Id.

17.     On July 3, 2013, Border Patrol Agent Celia G. Espinoza completed another Form I-213, Record of Deportable/Inadmissible Alien, for Petitioner alias Abimael Lopez-Ruiz.  See Respondent's Ex. 5.  This Form I-213 documented that Laredo Sector Border Patrol Agents had encountered Petitioner in Jim Hogg County, Texas, determined that Petitioner had no right to be or remain in the United States legally, and arrested him.  Id.

18.     This Form I-213 also documented Petitioner's earlier prosecution in Phoenix, Arizona, albeit for the incorrect crime of smuggling humans, and reinstated the prior Deportation Order, Form I-871.  Id.

19.     On August 30, 2013, Immigration Enforcement Agent Eric Rutland completed another Form I-213, Record of Deportable/Inadmissible Alien, for Petitioner alias Abimael Lopez-Ruiz.  See Respondent's Ex. 6.

20.     This Form I-213 documented Petitioner's conviction on July 10, 2013, in the Southern District of Texas, for violation of Title 8, United States Code, Section 1325, Improper Entry by Alien, for which Petitioner served a 60-day prison sentence; and declared Petitioner removable pursuant to Section 212(a)(9)(C)(i)(II) of the INA.  Id.

21.     On February 18, 2020, Deportation Officer Ferreira completed another Form I-213, Record of Deportable/Inadmissible Alien, for Petitioner under his real name.  See Respondent's Ex. 2.

22.     This Form I-213 documented: Petitioner's January 31, 2020 arrest and release by the Broward Sheriff's Office for driving without a license; his February 18, 2020 arrest by

immigration officers; and his multiple entries and removals to Mexico in March 2013 through September 4, 2013; and it reinstated the prior Deportation Order, Form I-871. Id.

23.     After determining that Petitioner had no right to be or remain in the United States legally, Officer Ferreira indicated that charges of re-entry after deportation, in violation of Title 8, United States Code, Section 1326 would be presented to the U.S. Attorney's Office in Fort Lauderdale, Florida. Id.

24.     Also on February 18, 2020, Officer Ferreira issued a Form I-871, Notice of Intent/Decision to Reinstate Prior Order, advising Petitioner of the reinstatement of the Order of Removal dated March 25, 2013. See Respondent's Ex. 7. The Notice was countersigned by Officer Hornett. Id.

25.     Petitioner was subject to federal prosecution from March 3, 2020 through June 12, 2020, when he was returned to immigration custody. See Respondent's Ex. 4. He is currently detained at Krome. Id.

26.     On August 13, 2020, Immigration Officer Christopher M. Cabral issued a Notice of Referral to Immigration Judge after a finding that, having been ordered removed, Petitioner has a reasonable fear of persecution or torture. See Respondent's Ex. 8. The matter has been scheduled for a "Withholding-only" hearing in Immigration Court on January 14, 2020. See Notice of Hearing in Removal Proceedings, Respondent's Ex. 10.[3]

27.     On September 15, 2020, Immigration Judge Jorge L. Pereira ("ILJ Pereira") denied Petitioner's request for a change in custody status, finding no jurisdiction due to a final order of

---

[3] Although the term "Withholding-only" does not appear in the Notice of Hearing, the parties agree that this is the nature of the January 14, 2021 Immigration Court hearing.

removal.  See Respondent's Ex. 9.  Petitioner reserved his right to appeal ILJ Pereira's ruling, which expired on October 15, 2020.  Id.[4]

28.     On September 16, 2020, ICE issued a decision continuing Petitioner's detention on the grounds of danger to the community, and to the safety of other persons or property.  See Respondent's Ex. 11.

**DISCUSSION**

A seminal issue in this case is whether Petitioner's current immigration detention falls within the scope of Section 1226(a) or Section 1231(a).  Respondent contends that Section 1231(a) governs Petitioner's detention because he is subject to a final order of removal in the form of the successively reinstated March 25, 2013 Order of Removal.  Petitioner argues that Section 1226(a) governs his detention due to his pending withholding-only proceedings.  Thus, Petitioner contends that ALJ Pereira incorrectly denied his request for a change in custody status on jurisdictional grounds and that he should have received a bond hearing.  As noted above, however, Petitioner did not appeal ALJ Pereira's ruling.  In the alternative, Petitioner argues that, even if he is being detained pursuant to Section 1231(a), he is entitled to release due to the length of his detention.

   *1.   The unsettled state of the law:*

According to Respondent, the Section 1226(a) versus Section 1231(a) dichotomy presented in this case is "currently pending before both the Supreme Court and the Eleventh Circuit."  See Response [D.E. 15 at 12].  The case before the Supreme Court is Guzman Chavez v. Hott, 940 F.3d 867 (4th Cir. 2019), *cert. granted sub nom*, Albence v. Guzman Chavez, 141 S. Ct. 107 (2020).  In Guzman Chavez, the Fourth Circuit concluded that the pendency of withholding-only proceedings rendered a reinstated removal order non-final, thereby making Section 1226(a), rather

---

[4]  At the Evidentiary Hearing, Petitioner acknowledged that he had not pursued this appeal.

than Section 1231(a), applicable to the alien's detention.  940 F.3d at 881-82.  The Second Circuit reached a similar conclusion in Guerra v. Shanahan, 831 F.3d 59, 64 (2d Cir. 2016) (Alien's "detention during the pendency of his withholding-only proceedings [wa]s detention pursuant to" Section 1226(a).)   However, a circuit split on this issue has been created by the opposite conclusions reached by the Ninth, Third and Sixth Circuits.  See Padilla-Ramirez v. Bible, 882 F.3d 826, 832 (9th Cir. 2017) ("Because Padilla–Ramirez's reinstated removal order remain[ed] administratively final, he [wa]s detained pursuant to [S]ection 1231(a)."); Guerrero-Sanchez v. Warden York County Prison, 905 F.3d 208, 217, 219 (3rd Cir. 2018) (holding "that a reinstated order of removal against an alien who ha[d] initiated withholding-only proceedings [wa]s administratively final[,]" hence the alien's detention was "governed by" Section 1231(a); Martinez v. LaRose, 968 F.3d 555, 564 (6th Cir. 2020) (alien in withholding-only proceedings who was subject to a reinstated removal order was being detained under the authority of Section 1231(a)).

In the case pending before the Eleventh Circuit, the Honorable Jonathan Goodman, United States Magistrate Judge, issued a Report and Recommendation concluding that the alien's "reinstated order of removal [wa]s not 'administratively final' while a withholding-only proceeding [wa]s pending[,]" hence, the alien was "entitled to a bond hearing under" Section 1226(a).  See Radzhabov v. Sessions, No. 18-CV-20357-MGC [D.E. 26 at 29, 40].  The Report and Recommendation was adopted, and the government appealed.  [D.E. 29, 30].  According to Respondent, the appeal "is currently stayed pending the forthcoming decision from the Supreme Court in *Albence*."  See Response [D.E. 15 at 12].

   2.   *Petitioner is not entitled to mandatory injunctive relief pursuant to Section 1226(a).*

Absent guidance from the Eleventh Circuit and given the current circuit split, which is pending resolution before the United States Supreme Court, it cannot be said that Petitioner has

shown a substantial likelihood of prevailing on the merits of his claim that Section 1226(a) governs his detention.  Therefore, Petitioner is not entitled to mandatory injunctive relief under this theory of the case.  Haddad, 784 F. Supp. 2d at 1295-96; Callander, 256 F.2d at 415.

### 2.   *Petitioner is not entitled to mandatory injunctive relief pursuant to Section 1231(a).*

The undersigned next addresses Petitioner's alternative argument that he should be released from immigration detention pursuant to Section 1231(a).  In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court created a six-month presumptive limit on the constitutional detention of an alien subject to a final order of removal.  Id. at 701.  The Supreme Court explained:

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id.  Petitioner's immigration custody commenced on June 12, 2020, upon the completion of his prosecution in the Southern District of Florida and his transfer to Krome.  See Respondent's Ex. 4; Section 1231(a) (removal period begins when alien is released from non-immigration detention or confinement).  Thus, the Zadvydas six-month presumptive period was only met as of December 12, 2020.  Moreover, even if Petitioner is successful in his withholding-only proceedings, such an outcome would only preclude his removal to Guatemala, the country where Petitioner claims that criminals threatened to kill him.  See 8 U.S.C. § 1231(b)(3)( "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.").  Therefore, at this point, Petitioner has not shown "good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future." Zadvydas, 533 U.S. at 701.  Accordingly, Petitioner is not entitled to mandatory injunctive relief under this alternative theory of the case.  Haddad, 784 F. Supp. 2d at 1295-96; Callander, 256 F.2d at 415.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Rodriguez's TRO Motion [D.E. 8] be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge.  Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 13th day of January, 2021.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Beth Bloom
       Counsel of Record